STATE of Missouri, Respondent,

v.

Earnest LANGSTON, Appellant.

Earnest LANGSTON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 61361, 64019.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 25, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 30, 1994.

Application to Transfer Denied
Jan. 24, 1995.

94

Henry B. Robertson, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John R. Watson, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Earnest Langston, appeals from judgments of conviction, after a jury trial, of two counts of robbery in the first degree, § 569.020, RSMo (1986); three counts of armed criminal action, § 571.015, RSMo (1986); kidnapping, § 565.110, RSMo (1986); sexual abuse in the first degree, § 566.100, RSMo (Cum.Supp.1993); stealing a motor vehicle, § 570.030, RSMo (1986); rape, § 566.030, RSMo (Cum.Supp.1993); and robbery in the second degree, § 569.030, RSMo (1986). He was sentenced as a prior offender to three terms of life imprisonment and to a total of 224 years' imprisonment, the sentences to run consecutively. He also appeals from the trial court's denial of his Rule 29.15 motion. We affirm.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdicts, the evidence established that on June 4, 1990, at approximately 9:00 p.m., in the Adams Mark Hotel in downtown St. Louis, defendant approached S.B. who was standing by the door to her room. Telling her he had a gun, defendant grabbed her arm and forced her down the hallway into a utility room. There defendant demanded money and S.B. gave him about $100.00. When he learned that she was alone in her hotel room, he took her back to the room and raped her. S.B. was transported to the hospital, where a physician prepared a rape kit, collecting samples of seminal fluid.

On June 5, 1990, at about 6:30 p.m., in the same hotel in which the above-described incident occurred, defendant grabbed J.J., a Canadian resident, by the back of her neck as she walked toward her room. Telling her that he had a gun, he demanded money. When she told him that other people were in her room, he pushed her down the hallway into the stairwell. There J.J. gave him money, which consisted of about three twenty dollar bills in Canadian currency. When he heard a noise in the stairwell, defendant ran up the steps to the next floor. J.J. ran down the steps to the floor below; and upon reaching the elevators, pressed the down button. When the elevator door opened, defendant was standing in the elevator. The door closed before J.J. was able to grab him.

On June 11, 1990, at about 11:30 a.m., defendant approached B.M. as she was entering her automobile in a parking garage located in downtown St. Louis. Telling her that he had a knife and a gun, he opened up a briefcase and showed her the knife. He then forced himself into the car and ordered her to drive. After a 30 to 45 minute drive, during which time defendant displayed the knife, defendant told B.M. to stop. He forced her to enter a vacant building, where he pushed her into a closet and sexually abused her. When a noise startled defendant, B.M. was able to free herself and run from the building. Although he ran after her, she escaped. When police arrested defendant later that same day, he was driving B.M.'s automobile.

After police arrested defendant, he gave them a written statement implicating himself in each of the crimes detailed above. From a lineup, B.M. identified defendant as the person who abducted her from the parking garage on June 11. From a photograph of the lineup, S.B. identified defendant as the person who raped and robbed her in the hotel on June 4. Two hotel employees identified defendant as the man they had seen lurking around the hotel in the early evening of June 4. A blood type examination of the seminal fluid taken from S.B. revealed that it was consistent with defendant's blood type. In addition, employees at a bank identified defendant as the person who exchanged three Canadian twenty dollar bills for United States currency; and a print of defendant's palm was found on the form filled out to exchange the currency. All of the witnesses who identified defendant in the lineup identified him at trial. J.J., however, was unable to identify defendant as her assailant.

The defense was that the witnesses were mistaken in their identification of defendant and that the police coerced him into making the written confession.

In his first point, defendant asserts that the trial court erred when it denied his motion to sever the three offenses and improperly joined the offenses which occurred at the hotel on June 4 and 5 with the incident which occurred on June 11. Defendant concedes that the two incidents in the hotel were properly joined, but argues that the June 11 offense was separate from the hotel offenses both in time and in character.

Joinder and severance are distinct issues for review. Joinder is either proper or improper; severance is discretionary. *State v. Holmes*, 753 S.W.2d 104, 105 (Mo. App.1988). Severance presupposes proper joinder. *Id.*

We first consider whether joinder was proper. Section 545.140(2), RSMo (1986) authorizes joinder of two or more offenses if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Rule 23.05 also authorizes joinder of related offenses and its language parallels that of § 545.140(2). Liberal joinder of offenses is favored to achieve judicial economy, and the trial court's decision should be based solely on the State's evidence. *State v. Forister*, 823 S.W.2d 504, 509 (Mo.App.1992).

Similar tactics are sufficient to constitute acts "of the same or similar character." *State v. Clark*, 729 S.W.2d 579, 582 (Mo.App.1987). In the case before us, the acts committed in the hotel on June 4 and 5 and the incident on June 11 are similar. The crimes were committed in the same general geographic area of the City of St. Louis, and in close proximity of time. In each instance a robbery was committed, the victim was threatened with a weapon, and the sexual attack on the victim either followed the robbery or, in the case of J.J. in the hotel stairwell, was likely to follow if defendant had not been frightened away. Although there are some dissimilarities between the offenses, identical tactics are not required. *See id.* Tactics which resemble or correspond in nature are sufficient to support joinder. *Id.* Here, the similarities between the offenses in the hotel and the June 11 offense are sufficient to put defendant's signature on the incidents. Joinder was therefore proper.

We next consider the trial court's denial of defendant's motion to sever. Rule 24.07 provides in pertinent part:

When a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court orders an offense to be tried separately. An offense shall be ordered to be tried separately only if:

\* \* \* \* \* \*

(b) A party makes a particularized showing of substantial prejudice if the offense is not tried separately; and

(c) The court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.

In deciding whether to grant a motion for severance, the trial court must weigh the benefits of trying the offenses simultaneously, thereby saving judicial time, against the potential prejudice to the defendant. *State v. Fowler*, 758 S.W.2d 99, 100 (Mo.App.1988). The denial of a defendant's motion will be disturbed only by a clear showing of an abuse of discretion. *Id.* at 101.

Our review of the record reveals no abuse of the trial court's discretion in denying defendant's motion for severance. The offenses arose out of only three incidents and the evidence pertaining to each offense was not complex. There was no reason to believe the jury could not distinguish between the evidence and the legal principles applicable to each crime. In addition, the jury received a separate instruction setting out the elements of each crime and was told to consider each offense independent of the others. There is nothing in the record to indicate that the jury was unable to distinguish the evidence or to properly apply the law to each offense. Absent a particularized showing of exactly how defendant was prejudiced, there can be no finding of an abuse of discretion by the trial court. *See Fowler*, 758 S.W.2d at 101. Defendant's first point is denied.

Defendant's second point is that the trial court erred in excluding his out-of-court statement that he was beaten by the police. He argues that the complaint, which he made to the nurses at the City of St. Louis (City) jail and which was written in his medical records, established that his confession was involuntary.

In the State's case, the police officers who questioned defendant after his arrest testified that they did not physically abuse him. In the defense portion of the case, evidence was admitted which established that there were bruises on defendant's arms and ears, his eardrum was perforated, and his scrotum was enlarged. Defendant's medical records from the City jail were admitted into evidence as business records. The court, however, did not permit the nurses from the City jail to testify regarding the notation on the medical records that defendant "states [he] was abused per p. o." Defendant did not testify at trial.

▆▆▆▆ Defendant first contends that the statement that he was beaten by the police went to the nature and cause of his injuries and was admissible under the exception to the hearsay rule. Generally, medical records are admissible as business records and medical history necessary for diagnosis and treatment is encompassed within the hearsay exception. *State v. Jones*, 835 S.W.2d 376, 382 (Mo.App.E.D.1992). This includes statements regarding the cause of a person's medical condition, as long as the statements relate to diagnosis and treatment. *U.S. v. Pollard*, 790 F.2d 1309, 1313 (7th Cir.1986). Statements attributing fault to the police for injuries a defendant sustained incident to an arrest do not qualify under the medical records exception to the hearsay rule. *Id.*

Here, defendant's statement that he was beaten by the police was inadmissible hearsay. Although contained in his medical records, it did not relate to diagnosis and treatment and was not essential to his examination. The trial court did not err in refusing to admit defendant's out-of-court complaint of mistreatment at the hands of the police.

▆▆▆▆ Defendant next argues that evidence of his complaint to medical personnel was proper surrebuttal, after the State presented evidence that he had not complained about the beating at the City jail to a social worker. The pertinent part of the social worker's testimony reads as follows:

[PROSECUTOR]: Okay. With regard to [defendant] did you make any notations or did you observe on or about him when you first interviewed him when he arrived at city jail any injuries?

  *   *   *   *   *   *

[WITNESS]: All right. I would have put under the remark section of the interview what I observed and what the resident said happened. If he had stitches or any bruises or I would ask how he received the particular injuries, and then I would remark on what he said and how he received them.

[PROSECUTOR]: And what did you write under [defendant]?

[WITNESS]: There's nothing on here.

[PROSECUTOR]: Did you observe anything about him when you received him?

[WITNESS]: No, sir.

The social worker's testimony rebutted the evidence which the court admitted that defendant had sustained injury. The testimony went to the issue of whether defendant sustained any injury, not to the issue of whether he complained to the social worker of sustaining the injuries at the hands of the police.

Finally, defendant contends that the trial court erred in permitting the State to argue that there was no evidence he was beaten. He contends that the it was improper for the State to comment on the existence of evidence that the State successfully excluded. *See State v. Luleff*, 729 S.W.2d 530, 536 (Mo. App.1987).

During closing argument, defense counsel repeatedly attempted to argue that defendant was beaten by the police. In each instance, the State's objections to defense counsel's comments was sustained and the court instructed the jury to disregard them. Nevertheless, defense counsel continued to allude to defendant's beating by the police:

[DEFENSE COUNSEL]: You all saw the letter from the doctor who treated [defen-

dant] in the emergency room at Regional Medical Center, the doctor says there was a perforation of the right ear, scrotal effusion which is swollen testicles. You ask yourselves how this came to be there.

[PROSECUTOR]: I object. There's no proof of how that came to be there.

[THE COURT]: Sustained.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: [The Prosecutor] is going to stand up and he's going to tell you what possible motive would [the police officers] have to come in and lie to you. Well, I can think of a big motive. They are being sued, they are being sued for beating up [defendant]. You think that gives them a motive?

We also know that performance is rewarded in the police department. . . .

It sickens me to think what was going on in that room that night. . . .

In the rebuttal portion of closing argument, the prosecutor stated:

[PROSECUTOR]: This is the defendant's exhibit, this is the medical record of [defendant] at city jail. This is what they purported to prove that [defendant] was beaten. There's nothing in the record that shows or proves he was beaten. . . .

\* \* \* \* \* \*

And I asked [the social worker] did you observe any injuries on [defendant] such as bruises, . . . He said no, he says he even asked him about scars because he wanted to make sure everything is written down. . . . There's no physical evidence to show that man was beaten.

And she's introduced a letter about a condition, swollen testicles and perforated ear drum. . . .

\* \* \* \* \* \*

So what does that prove. It proves there's absolutely no evidence that the evidence of these statements having been forced, coerced, or beaten out of him or anything else. . . .

■ This is not a situation where the State's closing argument improperly referred to the excluded evidence of defendant's claim

that he was beaten. Rather, the State's remarks in closing argument were made in direct response to defense counsel's comments that the police abused defendant. *See State v. Schmidt,* 865 S.W.2d 761, 763 (Mo. App.E.D.1993). The State's remarks that there was no evidence that defendant was beaten constituted proper argument, because there was no evidence that defendant sustained any injury as a result of police brutality. The trial court did not abuse its discretion in permitting the State's argument. Defendant's second point is denied.

In his third point, defendant claims the trial court erred in prohibiting defense counsel's cross-examination of one of the victims, S.B., about the civil action she brought against the hotel in which she was raped and robbed. He argues that he was entitled to raise the issue of the civil suit, because S.B.'s pecuniary interest in the suit against the hotel bore upon her credibility in the criminal action against him. The court limited cross-examination about the civil action against the hotel on the basis that such testimony was irrelevant.

■ The scope of cross-examination and the determination of matters that may bear on a witness's credibility are largely within the discretion of the trial court. *State v. Dunn,* 817 S.W.2d 241, 245 (Mo. banc 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1689, 118 L.Ed.2d 403 (1992). The court is given wide latitude in limiting cross-examination because of concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant. *Id.* It is within the court's discretion to restrict cross-examination. *Id.*

■ Here, evidence about S.B.'s civil action against the hotel was irrelevant to defendant's conviction for the crime charged. The relevant issue in the victim's suit against the hotel was not whether defendant was the perpetrator of the crime, but whether a crime was committed in the hotel. The court's prohibiting defendant's cross-examination of S.B. about her civil action against the hotel was not an abuse of the court's discretion.

Even if it were error for the trial court to deny defendant's cross-examination of S.B., defendant failed to preserve that issue for review. Defendant never made an offer of proof as to what S.B.'s testimony would have been at the time the court sustained the State's objection thereto. When an objection is sustained to proffered evidence, the offering party must show its relevancy and materiality by way of an offer of proof in order to preserve the issue for appellate review. *State v. Foulk*, 725 S.W.2d 56, 66 (Mo.App.1987).

Furthermore, in view of the overwhelming evidence against defendant, the error, if any, was harmless. The case against defendant pertaining to the rape and robbery of S.B. in the hotel was strong. S.B.'s identification of defendant was corroborated by two hotel employees and defendant made a written confession in which he admitted to the attack on S.B. in the hotel. Defendant's third point is denied.

In his fourth point, defendant contends that the trial court erred in overruling his *Batson* challenge to the State's use of its peremptory strikes to remove African–American venirepersons from the jury panel. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He alleges that the State's explanations for the strikes were pretextual in nature. We have reviewed the record and find that defendant's *Batson* challenge is without merit. No jurisprudential purpose would be served by a written opinion on that issue. Defendant's fourth point is denied pursuant to Rule 30.25(b).

In his final point, defendant claims the trial court erred in overruling both his Rule 29.15 motion and his motion for mistrial, to which he claims he was entitled because of references to unrelated crimes throughout the trial. We have reviewed the record and find that defendant's claims are without merit. No jurisprudential purpose would be served by a written opinion. Therefore, defendant's fifth point as it relates to his Rule 29.15 motion is denied pursuant to Rule 84.16(b) and as it relates to his motion for mistrial is denied pursuant to Rule 30.25(b).

The judgments of conviction are affirmed. The denial of defendant's Rule 29.15 motion is affirmed.

CRANE, P.J., and DOWD, Jr., concur.